IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                  25-CR-260

MATTHEW WHITE,

Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS

**THE UNITED STATES OF AMERICA**, by and through its attorneys, Michael DiGiacomo, United States Attorney for the Western District of New York, and Evan K. Glaberson, Assistant United States Attorney, of counsel, hereby files its response to defendant MATTHEW WHITE's pretrial motions seeking various forms of relief.  Doc. 31.

## PRELIMINARY STATEMENT

The defendant is charged by Superseding Indictment (Doc. 32) with two counts:

1. Threatening to Assault and Murder a Federal Law Enforcement Officer in violation of 18 U.S.C. § 115(a)(1)(B) and 115(b)(4), and

2. Interstate Communication with Threat to Injure a Person in violation of 18 U.S.C. § 875(c).

The charges are based on a series of increasingly vitriolic social media posts the defendant made on or about April 30, 2025 in response to public coverage of law enforcement operations involving immigration in Virginia about a week earlier.  One of the federal agents involved in the operation was captured on video footage that was shared widely on social

media and in local and national news coverage of the enforcement operation. The federal law enforcement officer was wearing a pink shirt.

In responding to images of the federal law enforcement officer in the pink shirt, the defendant posted the following on April 28, 2025:



**Matthew White** @MatthewWhi17466 · Apr 28
Even undercover agents have to identify themselves before they make an arrest, I'd like to do that for them, I'd like to find out the name of the bigot bastard on pink and make it so it's impossible for him to even grab milk in public.

Then, on April 30, 2025, in response to a still image of the same federal law enforcement officer, the defendant posted the following statement:

| Posts | Replies | Media |
|-------|---------|-------|

**Matthew White** @MatthewWhi17466 · 7h
I can't wait to put a bullet into this guy's brain, but first his children.

> **Matthew White** @MatthewWhi17466 · Apr 30
> This guy needs to be tied up. x.com/Hynek_Maneuver...



Defendant has now filed the following motions:

1. Motion to Dismiss the Indictment on First Amendment Grounds (pp. 3 - 20);

2. Motion to Dismiss the Indictment for Failure to Allege Mens Rea (pp. 21 – 25);

3. Motion for a Bill of Particulars (pp. 25 – 31);

4. Motion to Compel Brady/Giglio Material (pp. 31 – 35);

5. Motion for Disclosure of Informant Information (pp. 35 – 36);

6. Motion for Disclosure of 404(b), 608 and 609 Information (pp. 36 – 37);

7. Motion for Early Disclosure of Jencks Act Material (pp. 38 – 39);

8. Motion for Preservation of Rough Notes (pp. 40 – 41);

9. Motion for Leave to Make Further Motions (p. 41).

For the reasons set forth below, the defendant's motions should be denied outright or denied pending resolution before the District Court in advance of the not yet scheduled trial date.

**ARGUMENT**

**I. THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT SHOULD BE DENIED**

The defendant seeks to dismiss the indictment because he claims the charged statutes are overbroad and are unconstitutional as applied in this case. However, it is well-settled that the First Amendment does not protect "true threats" of violence. *see, e.g.*, *Counterman v. Colorado*, 600 U.S. 66, 69 (2023) ("True threats of violence are outside the bounds of First Amendment protection and punishable as crimes."); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992) (observing that "threats of violence are outside the First Amendment" and thus can be criminalized by the U.S. Government). The Supreme Court has found that "[t]he protections afforded by the First Amendment ... are not absolute, and [the Supreme Court] ha[s] long recognized that the government may regulate certain categories of expression consistent with the Constitution." *Virginia v. Black*, 538 U.S. 343, 358 (2003).

Both 18 U.S.C. § 115(a)(1)(B) and §875(c) criminalize only true threats, not constitutionally protected speech, and therefore neither statute is facially unconstitutional nor is either statute overbroad.

4

The Second Circuit has consistently upheld indictments that do little more than track the language of the statute charged and state the time and place in approximate terms of the charged offense. *See United States v. Piro*, 212 F.3d 86, 92 (2d Cir. 2000). As a general rule, an indictment is sufficient if it contains the elements of the offense charged, fairly informs a defendant of the charges against which he must defend and enables the defendant to plead double jeopardy in the event of further prosecution. *Hamling v. United* States, 418 U.S. 87, 117 (1974). To meet this sufficiency standard, an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (internal citations omitted).

"The general issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged." *United States v. Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998) (citing *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995)). Generally, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Id.* "[An] indictment does not have to specify evidence or details of how the offense was committed" because "the validity of an indictment is tested by its allegations, not by whether the Government can prove its case." *United States v. Walters,* 963 F. Supp. 2d 125, 130 (E.D.N.Y. 2013). For this reason, "there is no federal criminal procedure mechanism that resembles a motion for summary judgment in the civil context." *United States v. Zodhiates*, 166 F. Supp. 3d 328, 344 (W.D.N.Y. 2016) (quoting *United States v. Yakou*, 428 F.3d 241, 246 (D.C. Cir. 2005)).

A court may only grant a motion to dismiss a criminal indictment if it can be resolved "without a trial on the merits." *Zodhiates*, 166 F. Supp. 3d at 345 (quoting Fed.R.Crim.P. 12(b)(3)); *see also United States v. Mara*, No. 20-CR-180, 2021 WL 8200597 (W.D.N.Y. Apr. 19, 2021), *report and recommendation adopted*, No. 20-CR-180-V, 2022 WL 1228382 (W.D.N.Y. Apr. 26, 2022); *United States v. Falkowitz*, 214 F. Supp. 2d 365, 372 (S.D.N.Y. 2002) (holding that "on a motion to dismiss made under Rule 12(b), a court assesses the legal sufficiency of an indictment without consideration of the evidence the government may introduce at trial"). In *Mara*, the court denied defendant's motion to dismiss an interstate threats charge because "summary judgment generally does not exist in federal criminal procedure, since the sufficiency of the evidence is not appropriately addressed by a pretrial motion to dismiss." *Mara*, 2021 WL 8200597 at *3. The *Mara* court denied many of the same arguments made in the instant case because the arguments must be raised before a trial jury. *Id.* Similarly, in *United States v. Marseet*, the court denied several of the same motions to dismiss advanced by the defendant, finding that the arguments advanced by defendant seeking to dismiss his threats charge were "not appropriately addressed on a pretrial motion to dismiss" and "best left to a jury." Dkt. 24-CR-6032, 2025 WL 3481813 (W.D.N.Y. Dec. 4, 2025), *appeal dismissed*, No. 26-1092, 2026 WL 2021397 (2d Cir. June 29, 2026).

**Both Counts are Constitutional as Applied**

The defendant argues that the "circumstances of this case – the context in which the communication was made – reveal an unconstitutional application of both Section 115(a)(1)(b) and Section 875(c)." Doc. 31, p. 14. Defendant argues that his "X" postings were political hyperbole based on the "unique circumstances" that he claims are "readily

6

apparent from viewing Mr. White's "X" account." *Id.* at 15. Defendant challenges the sufficiency of the evidence, cloaked in the verbiage of an "as applied" constitutional challenge. Where a "defendant contends that the evidence did not establish that his speech was a true threat of violence unprotected by the First Amendment, he challenges the sufficiency of the evidence, rather than lodges a constitutional challenge." *United States v. Ward*, Dkt. 24 CR.401, 2025 WL 601312 (E.D.N.Y. Jan. 28, 2025) (quoting *United States v. Hunt*, 82 F.4th 129, 135 (2d Cir. 2023). The issues raised by the defendant should be heard and decided by a jury, not in a motion to dismiss.

Count One of the Superseding Indictment charges the defendant with threatening to assault and murder a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and 115(b)(4), as follows:

> On or about April 30, 2025, in the Western District of New York, the defendant, MATTHEW WHITE, did threaten to assault and murder B.G., a Federal law enforcement officer, employed by the Department of Homeland Security, with the intent to impede, intimidate, and interfere with such Federal law enforcement officer while engaged in the performance of his official duties, and with the intent to retaliate against such Federal law enforcement official on account of the performance of his official duties.

18 U.S.C. § 115, provides that (1) "[w]however ... threatens to assault, kidnap, or murder, a United States official" (2) "with intent to impede, intimidate, or interfere with such official ... while engaged in the performance of official duties, or with intent to retaliate against such official ... on account of the performance of official duties, shall be [guilty]." 18 U.S.C. § 115(a)(1)(B). The first element of § 115 is satisfied if a threat constitutes a "true threat," meaning one that "an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret ... as a threat of injury," *United States v. Turner*, 720 F.3d

411, 420 (2d Cir. 2013) (first alteration in original) (internal quotation marks omitted), and one that the defendant made at least recklessly by consciously disregarding the "risk that his communication[ ] would be viewed as threatening violence," *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106, 2111–12, 216 L.Ed.2d 775 (2023). The second element is purely subjective, turning on the defendant's intent in making the communication. *See Turner*, 720 F.3d at 420.

Count Two of the Superseding Indictment charges the defendant with making interstate threats in violation of 18 U.S.C. § 875(c) as follows:

> On or about April 30, 2025, in the Western District of New York, the defendant, MATTHEW WHITE, with the intent to communicate a true threat, with the knowledge that the communication would be viewed as a true threat, and with conscious disregard of a substantial risk that the communication would be viewed as a true threat, did knowingly and willfully transmit in interstate and foreign commerce, a communication, that is a post on the internet social networking site "X" (formerly known as "Twitter"), which communication contained threats to injure the person of another, specifically B.G., an individual known to the Grand Jury, by stating "I can't wait to put a bullet into this guy's brain, but first his children."

Section 875(c) provides that "whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." The elements of § 875(c) include: (1) the knowing transmission in interstate commerce of a communication, (2) the circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury," and (3) "the defendant transmitted the communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat, or with conscious disregard of a substantial risk that the communication would be viewed as a true

threat.  *See Counterman v. Colorado*, 600 U.S. 66, 69 (2023); *Elonis v. United States*, 575 U.S. 723, (2015); *United States v. Francis*, 164 F.3d 120, 123 (2d Cir. 1999).

First and foremost, "whether a defendant's statement is a true threat or mere political speech is a question for the jury." *United States v. Nissen*, 432 F. Supp. 3d 1298, 1314 (D.N.M. 2020) (quoting *United States v. Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999)).  Attempting to discern what was going through a defendant's mind in the context of a motion to dismiss the indictment is not a proper function for the Court.  In *United States v. Hunt*, the Second Circuit explained that "the true threat determination involves no legal principles warranting independent review of the jury's conclusion," and that "[t]his holding aligns with our well-established view that 'whether words used are a true threat' is 'a question of fact' for the jury." 82 F.4th 129, 136–37 (2d Cir. 2023) (quoting *United States v. Amor*, 24 F.3d 432, 436 (2d Cir. 1994)) (evaluating sufficiency of evidence for conviction under 18 U.S.C. § 115 (threat against United States official)). The question of whether a statement is a "true threat" is a factual question rather than a legal question and it is well settled that such a determination is "best left to a jury" because, in part, such a determination "would, for example … require consideration of the 'context' of the expression.'" *United States v. Kelly*, Dkt. 8:24-CR-00493, 2025 WL 3020028 (N.D.N.Y. July 29, 2025). "Where similar statutes employ the word 'threat,' it is generally held that the better course is to decide each case on its facts leaving defendant's intent as a question for the jury." *United States v. McClain*, No. 19-CR-40A, 2019 WL 8955241, at *4–5 (W.D.N.Y. Dec. 9, 2019), report and recommendation adopted, No. 19-CR-40-A, 2020 WL 1503227 (W.D.N.Y. Mar. 30, 2020) (see cases cited therein).

Defendant also moved to dismiss count 2 of the indictment for failure to include a "*mens rea*" element of 18 U.S.C. § 875(c). While the original indictment language tracked the language of the statute, the Superseding Indictment language for Count 2 includes the *mens rea* the defendant claims was necessary. As a result, defendant's motion to dismiss Count 2 should be denied as moot.

In this case, the Superseding Indictment contains the elements of each offense, fairly informs the defendant of the nature of his conduct, including when and where he is charged with committing the offense, and fairly apprises him of the charges against which he must defend. As a result, defendant's motion to dismiss the indictment must be denied. Defendant's remaining arguments may be made to the trial jury in this case.

## II. DEFENDANT'S REQUEST FOR A REQUEST OF BILL OF PARTICULARS LACKS MERIT

The Court should deny the defendant's request for an Order directing the government to file a Bill of Particulars. The Second Circuit has held that "[a] bill of particulars should be required only where the charges of the Indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (citations omitted). Moreover, "[a]cquisition of evidentiary detail is not the function of the bill of particulars." *Id.* Rather, the bill of particulars serves to provide a defendant with information necessary for preparation of his defense and to avoid prejudicial surprise at trial. *Id.* "Necessary" means more than merely "useful"; if the defendant has been given adequate notice of the charges against him through the indictment, the government is not required to disclose additional details, however useful to the defense. *See United States v.*

*Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (internal citations omitted); *United States v. Payden*, 613 F. Supp. 800, 816 (S.D.N.Y. 1985); *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991) (bill of particulars not required to allege specific activities attributed to defendant in drug conspiracy where an indictment is otherwise sufficient and names co-conspirators).

The government bears no obligation to allow the defense to "preview its case or expose its legal theory." *United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977). Nor is the government required to disclose the manner in which it will attempt to prove the charges, *United States v. Brevard*, 27 F.R.D. 250, 251 (S.D.N.Y. 1961) or the precise manner in which the crimes charged in the Superseding Indictment were committed*, United States v. Andrews*, 381 F.2d 377, 378 (2d Cir. 1967), *cert. denied*, 390 U.S. 960 (1968), because the "manner or means by which a crime is carried out constitutes evidentiary matter, not ultimate facts." *United States v. Boneparth*, 52 F.R.D. 544, 545 (S.D.N.Y. 1971). The government is also not required to provide information tantamount to an itemized preview of its proof, which allows the defendant to tailor his own testimony and explain away the government's proof. *United States v. Cimino*, 31 F.R.D. 277, 279 (S.D.N.Y. 1962). Demands seeking disclosure of the government's legal theory are simply not within the proper scope of a Bill of Particulars. *See, e.g., United States v. Shorher*, 555 F. Supp. 346, 350 (S.D.N.Y. 1983).

The government is not required to answer inquiries when it has no knowledge or information. *United States v. Cohen*, 39 F.R.D. 45 (S.D.N.Y. 1965). Nor is it the function of a Bill of Particulars to furnish a defendant with information that the government need not provide at trial. *See United States v. Cummings*, 49 F.R.D. 160, 161 (S.D.N.Y. 1969).

Here, the Superseding Indictment, coupled with the discovery already provided to the defendant and made available for defense counsel's review, are more than sufficient to apprise the defendant of the charges and enable him to prepare a defense. Specifically, the government has provided materials including subpoena returns, copies of the defendant's social media postings, and recordings of the defendant being interviewed and arrested. Coupled with the language of the Superseding Indictment, the defendant has all the particulars to which he is entitled. Instead, the defendant attempts to use a bill of particulars as a discovery device and to preview the government's trial theories—neither of which is a permissible basis for granting a motion under Rule 7(f). *See, e.g., United States v. Guerrerio*, 670 F. Supp. 1215, 1225 (S.D.N.Y. 1987) (a bill of particulars "is not a discovery tool and is not intended to allow defendants a preview of the evidence or the theory of the government's case). Accordingly, no bill of particulars is warranted.

The defendant's numerous requests for bills of particulars of legal theories and exhaustive evidentiary detail should all be denied. These requests would impose upon the government the burden of reducing formally to particulars all the evidence the government might use on any theory. The requests would also seem to use the procedural limits at trial of evidence to foreclose the government from using other evidence not reduced to writing in bills of particulars. The government should never be required to provide the equivalent of an itemized preview of its proof through the device of a bill of particulars, lest a defendant tailor his own testimony or that of other witnesses to try to explain away the United States' case. *United States v. Cimino*, 31 F.R.D. 277, 279 (S.D.N.Y. 1962), *aff'd*, 321 F.2d 509 (2d Cir. 1963); *see also United States v. Louis Carreau, Inc.,* 42 F.R.D. 408, 415 (S.D.N.Y. 1967). Well in

advance of trial, the defendant will have full discovery, exculpatory and impeachment material (if any exists at that time), a witness list, exhibit lists, and 3500 materials; therefore, the defendant will not be surprised by the evidence against him or be subject to future jeopardy in a way that might otherwise justify ordering any of the particulars that he requests. The defendant requests for bills of particulars should be denied because the requests are beyond information that is already being provided. *See United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989).

### III. DEFENSE REQUEST FOR ADDITIONAL DISCOVERY SHOULD BE DENIED AS MOOT, OVERBROAD, OR PREMATURE

In federal court, "pre-trial discovery in criminal cases is strictly circumscribed." *United States v. Nelson*, 606 F. Supp. 1378, 1389 (S.D.N.Y. 1985). "Although Rule 16(a) [of the Federal Rules of Criminal Procedure] ("Rule 16") provides a mechanism for liberal discovery, it was not intended to provide the defendant with access to the entirety of the government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). The government has complied with its obligations in this case by providing voluntary discovery. Therefore, the government objects to the defendant's discovery demands ("demands") to the extent that the demands are moot, premature, or request material beyond the scope of the government's discovery duties.

Rule 16 requires the government, at the defendant's request, to produce the defendant's statements, criminal record, objects, reports, and expert summaries. Rule 16 does not entitle the defendant to disclosure of every report or other documents in existence that somehow relates to the case. *See* Rule 16(a)(2). The government has already made required disclosures

through voluntary discovery and will continue to provide any discoverable materials in conformity with Rule 16 or in response to reasonable requests by the defendant.

To date, the government has complied with all the requirements of Rule 16. The government's delivery of the voluntary discovery materials renders the remaining discovery requests moot. Pre-trial discovery is an on-going effort. As the government identifies any other evidence which falls within the scope of Rule 16, it will provide such evidence to the defendant and his counsel. The government will continue to comply with its continuing duties to disclose as set forth in Rule 16(c). The government herein notifies the defendant that it intends to introduce all of this evidence at trial pursuant to Rule 12(b)(4).

The defendant also makes several requests related to documents from state and local agencies and private social media companies. The government believes it has turned over all the documents in its possession, custody and control from these entities, and that nothing more is required under Rule 16. The defendant's request for broad categories of law enforcement documents and social media records, which are beyond the scope of Rule 16 discovery, should be denied.

**IV.  THE DEFENDANT HAS NOT PROVIDED ANY BASIS TO OVERRIDE THE GOVERNMENT'S PRIVILEGE OF NONDISCLOSURE OF INFORMANT INFORMATION**

The defendant's motion for the early disclosure of the names and files of the government's informant(s) and the victim of the threats should be denied. The defendant is charged with posting threats against the life of a federal law enforcement officer. An image

of this officer was publicly shared and subject to many harassing comments, the worst of which included defendant's threat to shoot him and his children in the head. Defendant's request for broad swaths of the victim's identifying and personnel information, at this early stage, should be denied as premature.

The law rightly acknowledges a privilege to withhold the identities and backgrounds of confidential informants because, "it recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The defendant bears the burden of making "a specific showing that disclosure was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case." *United States v. Bejasa*, 904 F.2d 137, 139-40 (2d Cir. 1990). Disclosure of a confidential informant's identity is an "extraordinary remedy," *United States v. Muyet*, 945 F. Supp. 586, 602 (S.D.N.Y.1996).

Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity. A defendant is generally provided the identity of an informant "[w]here the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilty or innocence." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (quotation omitted). Thus, the defense must assert both participation by the informant in the

15

offense and relevance of the information sought. Materiality is not established simply by showing that the confidential informant was a participant and a witness to the crime charged. *See United States v. Jiminez*, 789 F. 2d 167, 170 (2d Cir. 1986).

The defendant has not satisfied his burden of showing a "particularized need" for the disclosure of the informants' identities. Particularly in the absence of any such showing and given nature of the charges in this case (threats of violence), the government's interest in protecting the informants' safety certainly outweighs the defendant's generalized and unsupported statement of need to learn the informants' identities. *Jimenez*, 789 F. 2d at 170.

The same is true of victims of crimes. The defendant has failed to demonstrate any need at this stage for disclosure of a broad swath of identifying and employment information of the victim of defendant's threats. Courts routinely defer production of §3500 material to protect witness safety, and the same considerations apply at this much earlier stage well before 3500 material has been disclosed. *See United States v. Urena*, 989 F. Supp. 2d 253 (S.D.N.Y. 2013) (citing *United States v. Remire*, 400 F.Supp.2d 627, 633 (S.D.N.Y.2005) ("[C]ourts in this circuit are especially reluctant to require the disclosure of witness lists in cases such as this one that involve allegations of crimes of violence."); *United States v. Robles*, No. 04 Cr. 1036, 2005 WL 957338, at *1 (S.D.N.Y. Apr. 22, 2005) (the disclosure of a witness list "is particularly inappropriate in this case, which involves charges of violent crimes, where the witnesses will include cooperating individuals and victims.").

Here, the government will reveal the name of witnesses and victims and any impeachment and *Giglio* at the same time as Jencks Act material per District Court Order. *Cf. United States v. Davis*, 57 F. Supp. 3d 363, 369 (S.D.N.Y. 2014) (concluding that the government's planned disclosure of *Giglio* material—including the identities of the cooperating witness and cooperating source—one week before trial, and Jencks Act material on the Friday before trial to be reasonable); *United States v. Rodriguez–Perez*, No. 10 Cr. 905(LTS), 2012 WL 3578721, at *11 (S.D.N.Y. Aug. 16, 2012) (approving government's planned disclosure of *Giglio* and Jencks Act material one week before trial in narcotics conspiracy and money laundering case); *United States v. Badoolah*, No. 12 Cr. 774(KAM), 2014 WL 4793787, at *16 (E.D.N.Y. Sept. 25, 2014) (stating that there was no reason to deviate from the government's standard practice of producing *Giglio* material and Jencks Act material one week before trial). The defense has not provided any reason to believe that the facts and circumstances here are such that it will be unable to use the *Giglio* material effectively if disclosed on that schedule. *See United States v. Conyers*, No. S13 15-CR-537 (VEC), 2016 WL 7189850, at *8 (S.D.N.Y. Dec. 9, 2016).

Rule 16 of the Federal Rules of Criminal Procedure does not require the Government to disclose the names of witnesses prior to trial. *See United States v. Benacquista*, No. 08CR94A, 2009 WL 1651454, at *3 (W.D.N.Y. June 8, 2009), report and recommendation adopted, No. 08-CR-94, 2009 WL 2568448 (W.D.N.Y. Aug. 19, 2009); *United States v. Najera-Perez*, No. 1:12-CR-232-2-CAP, 2014 WL 888651, at *26 (N.D. Ga. Mar. 6, 2014) ("[T]he Federal Rules of Criminal Procedure do not 'requir[e] the Government to supply witness lists or witness statements until that witness has testified on direct examination, unless such information is required sooner by *Brady* or *Giglio*.'") (citation omitted) (alteration in original).

Nothing in the Jencks Act supports the defendant's request. Fed. R. Crim. P. 16(a)(2) "prohibits discovery of statements by government witnesses or prospective government witnesses except as provided in the Jencks Act, 18 U.S.C. § 3500." *United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988). "The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only after the witness has testified on direct examination at trial." *United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) (emphasis in original). The purpose of the Jencks Act is to protect the prosecution's files from unwarranted disclosure and to allow defendants materials usable for the purposes of impeachment. *See United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976). "The prosecution ... must disclose [statements] under the Jencks Act[ ] ... in a manner allowing the defense a reasonable opportunity to examine it and prepare for its use in the trial." *United States v. Celis*, 608 F.3d 818, 835 (D.C. Cir. 2010) (internal quotations and citations omitted).

*Brady* does not create a constitutional right of pretrial discovery in a criminal proceeding, and it does not require that the prosecution reveal before trial the names of witnesses. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). The *Brady* doctrine does not cover the defendant's request. Further, *Brady* does "not require the government to do defense counsel's pretrial preparation, nor develop defense strategy, nor does it require the government to point out the obvious." *United States v. Larson*, 567 F. Supp. 500, 503 (S.D.N.Y. 1983).

18

Furthermore, "as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Coppa*, 267 F.3d at 144; *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) ("the Government must make disclosures in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously"). As the defendant and the Court are aware, it is the trial court's practice to set a pretrial scheduling order. That practice should be followed in this case because the defendant has failed to make any showing of good cause for the extraordinary, expedited relief that he seeks. *See United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001).

**V.      THE DEFENDANT'S REQUEST FOR DISCLOSURE OF EVIDENCE PURSUANT TO FEDERAL RULES OF EVIDENCE 404(b), 608 AND 609 IS PREMATURE**

The defendant moves for pretrial disclosure of any evidence the government intends to introduce at trial pursuant to Rules 404(b), 608 and 609 of the Federal Rules of Evidence. The government will provide notice of such information to the defense pursuant to the District Court's trial Scheduling Order, which has yet to be issued.

Rule 404(b) of the Federal Rules of Evidence requires the government to provide "reasonable notice in advance of trial" of the "general nature" of prior uncharged crimes that the government intends to use at trial. No set timetable for notice is required, and evidence the government may seek to offer at trial often changes as the proof unfolds or as possible defenses are revealed at trial. *United States v. Aguirre-Parra*, 763 F. Supp. 1208, 1217 (S.D.N.Y. 1991). Furthermore, the reasonableness of Rule 404(b) notice is determined by the

19

circumstances of the case. *United States v. Falkowitz*, 214 F. Supp. 2d 365, 393 (S.D.N.Y. 2002) (permitting disclosure of Rule 404(b) evidence two weeks before trial, "as is typically considered sufficient in this Circuit").

## VI. THE DEFENDANT IS NOT ENTITLED TO PREMATURE DISCLOSURE OF JENCKS ACT MATERIAL OR TO ALL STATEMENTS HE SEEKS

The defendant is entitled by statute to witness statements only *after* a witness has completed testimony on direct examination. Nevertheless, the defendant moves for early disclosure of Jencks materials. The Jencks Act requires the government to produce any prior statements of a witness that relates to the subject matter of the witness's testimony and that are in the government's possession, *after* the direct examination of the witness. 18 U.S.C. § 3500. As the defendant and the Court are aware, it is the trial court's practice to set a pretrial scheduling order. That practice should be followed in this case because the defendant has failed to make any showing of good cause for the extraordinary, expedited relief that he seeks. *See United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001). The government will provide Jencks material before it will be required to be produced by law, subject to an agreement or a protective order. Nonetheless, the United States agrees to provide witness statements required by 18 U.S.C. § 3500 at the time set by the trial court pursuant to its usual practice. *See Coppa*, 267 F.3d at 145-46. However, the government reserves the right to withhold witness statements until a witness has completed direct testimony, and where production of the witness' statement prior to trial would expose the witness, or his/her family, to retaliation or danger. This pertains only to witnesses who are expected to testify at trial. *See* § 3500(a).

## VII. <u>THE GOVERNMENT IS IN CONTINUING COMPLIANCE WITH ITS BRADY AND GIGLIO OBLIGATIONS</u>

The defendant seeks to compel the production of material under *Brady v. Maryland*, 373 U.S. 83 (1963). The government acknowledges its affirmative continuing duty to provide a defendant with exculpatory evidence under the authority of *Brady*, as well as evidence that the defense might use to impeach the government's witnesses at trial. *See United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972).

However, *Brady* does not create a constitutional right of pretrial discovery in a criminal proceeding, and it does not require that the prosecution reveal the names of witnesses before trial. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *see also Lucas v. Regan*, 503 F.2d 1, 3 (2d Cir. 1974), cert. denied, 420 U.S. 939 (1975) ("[n]either *Brady* nor any other case we know of requires that disclosures under *Brady* must be made before trial"); *United States v. Shaker*, 543 F. Supp. 1059, 1061 (S.D.N.Y. 1982) ("*Brady* does not entitle a defendant to a general right of pre-trial discovery."). The *Brady* doctrine does not cover many of the requests made by the defendant. For instance, evidence that is not exculpatory, but relevant for the purposes of impeachment, must be produced to the defense, but need not be turned over in advance of trial. *United States v. Nixon*, 418 U.S. 683, 701 (1974); *United States v. Coppa*, 267 F.3d 132, 145-46 (2d Cir. 2001). *Brady* does not require the disclosure of evidence affecting the credibility of prosecution witnesses prior to such time as it would otherwise become available under the discovery rules or the Jencks Act. *See United States v. Dotel*, 1994 WL 25787, at *3 (S.D.N.Y. Jan. 21, 1994) (*Brady* impeachment material as to government's witnesses – i.e., *Giglio* material – is properly disclosed when the witness testifies at trial); *United States v. Feldman*, 731 F. Supp. 1189, 1200 (S.D.N.Y. 1990); *United States v. Victor Teicher & Co.*, 726

F. Supp. 1424, 1442-43 (S.D.N.Y. 1989). Impeachment material is normally disclosed at the same time as Jencks Act material – after the government witness has testified on direct examination. *See* 18 U.S.C. § 3500(B); *Coppa*, 267 F.3d at 145-46.

The government will provide, if it exists, *Giglio* material, i.e., promises of leniency or immunity agreements with government witnesses, plea and/or non-prosecution agreements and letters or memorandum of understanding regarding such, criminal arrest records of all prosecution witnesses, immoral, vicious or criminal acts committed by witnesses, prior inconsistent statements, any payments to witnesses or family members thereof, and all other promises or considerations given by government personnel to government witnesses or family members thereof, in accordance with the schedule set by the District Court prior to trial and no later than when the government produces and delivers the Jencks Act material in this case. Courts have routinely held that a prosecutor's compliance with the disclosure of material under the Jencks Act is timely disclosure under *Brady*. *See United States v. Martino*, 648 F.2d 367, 384 (5th Cir. 1981) ("When alleged *Brady* material is contained in Jencks Act material, disclosure is generally timely if the government complies with the Jencks Act." (citation omitted)); *United States v. Anderson*, 574 F.2d 1347, 1352 (5th Cir. 1978) (same); *United States v. Persico*, 621 F. Supp. 842, 870 n.3 (S.D.N.Y. 1985) (same).

Therefore, the Court should find that the government is in compliance with its *Brady* and *Giglio* obligations and deny the defendant's motion.

## VIII.  PRESERVATION OF EVIDENCE, INCLUDING NOTES

The United States has no objection to the request that government agents retain notes taken during the investigation of this case.  As a matter of routine practice, all federal law enforcement agencies already preserve notes.  The government will request all agents to retain their notes relevant to this investigation, where such notes have not resulted in the preparation of a final report.  *See United States v. Wei*, 862 F. Supp. 1129, 1139 (S.D.N.Y. 1994).  However, the defendant's request covers material that may not be Jencks material, and so may exceed the government's obligation under 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2.  The retention of agents' notes is not required if the notes are subsequently incorporated into a final report.  *United States v. Elusma*, 849 F.2d 76, 79 (2d Cir. 1988); *United States v. Sanchez*, 635 F.2d 47, 66 n.20 (2d Cir. 1980); *United States v. Percan*, 1999 WL 13040 (S.D.N.Y. 1999); *United States v. Hilario*, 1990 WL 106831 (S.D.N.Y. 1999).  Moreover, even if retained, rough notes are not discoverable, even as Jencks Act material.  *United States v. Koskerides*, 877 F.2d 1129, 1133 (2d Cir. 1989).

## IX.  OTHER MOTIONS

The defendant requests that the Court allow him to make further and additional motions if necessary.  The government notes that the defendant will have an opportunity to respond to the arguments made by the government in the instant submission in reply brief as well as at oral argument.  In addition, the government acknowledges that the defendant may seek additional relief subject to the Federal Rules of Criminal Procedure and the Court's scheduling orders.  The government will, however, object to any additional motions that could have been made at the time designated for the filing of pretrial motions.  Additionally,

the government reserves the right to respond to, and oppose, any additional motions brought by the defendant.

## X.   GOVERNMENT'S RULE 12(b)(4)(A) NOTICE

The government intends to use all items of evidence that the defendant has been provided with or been made aware of in accordance with Federal Rule of Criminal Procedure 12(b)(4)(A).

## XI.   GOVERNMENT'S CROSS DEMAND FOR RECIPROCAL DISCOVERY

Pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, the government demands that the defendant provide the government the opportunity to inspect and copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are within the possession, custody or control of the defendant and which the defendant intends to introduce as evidence in chief at the trial.

In addition, the government also demands that the defendant permit the government to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case or copies thereof within the possession or control of the defendant which the defendant intends to introduce as evidence in chief at trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness's testimony.

Finally, the government will demand, upon the District Court's setting a trial date and accompanying Scheduling Order, that the defendant provide a summary of any testimony that the defendant intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence at trial.

## **CONCLUSION**

Based upon the foregoing, the government's motion should be granted, and where not consented to, the defendant's motions should be denied in their entirety.

DATED:      Buffalo, New York, July 31, 2026.

           MICHAEL DIGIACOMO
           United States Attorney

BY:    s/EVAN K. GLABERSON
        Assistant United States Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        716/843-5871
        Evan.Glaberson@usdoj.gov